Milo Steven Marsden (4879)
Kimberly Neville (9067)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone:  (801) 933-7360
marsden.steve@dorsey.com
neville.kimberly@dorsey.com

Anthony P. Badaracco (Pro Hac Vice to be filed)
DORSEY & WHITNEY LLP
1301 Avenue of the Americas, Floor 13
New York, NY 10019
Telephone: (212) 415-9200
Email: badaracco.anthony@dorsey.com

*Attorneys for Canon U.S.A., Inc.*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

---

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. Jonathan Koehle, Relator, <br><br>     Plaintiff, <br><br> vs. <br><br> BROTHER INDUSTRIES, LTD., BROTHER INTERNATIONAL CORPORATION, HP INC. EPSON AMERICA, INC., SEIKO EPSON CORPORATION, CANON INC., CANON U.S.A. INC., LEXMARK INTERNATIONAL, INC., <br><br>     Defendants. | **DEFENDANT CANON U.S.A., INC.'S MOTION TO DISMISS** <br><br> Civil No. 2:25-cv-00499 <br><br> Judge Jill N. Parrish <br><br> Magistrate Judge Jared C. Bennett |

**TABLE OF CONTENTS**

I.    RELIEF SOUGHT AND GROUNDS FOR RELIEF ...........................................................1

II.   STATEMENT OF FACTS ...............................................................................................3

III.  ARGUMENT ...................................................................................................................7

      A.    The Relator's Complaint Should be Dismissed Under Rule 9(b)...........................7

          1.    Relator Fails to Identify a Single False Claim. ...........................................8

          2.    Relator Fails to Identify "Who" Made the False Claim..............................10

          3.    Relator Fails to Identify "What" Made the Claim False............................12

          4.    Relator Fails to Identify "When" the False Claim Was Made....................14

          5.    Relator Fails to Identify "Where" the False Claim Was Made...................15

          6.    Relator Fails to Identify "How" the False Claim Was Made.....................15

      B.    The Relator's Complaint is Time-Barred. ............................................................16

IV.   REQUEST FOR RELIEF ...............................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel Barrick v. Parker-Migliorini Int'l, Inc.*,
No. 2:12-cv-00381-DB, 2015 U.S. Dist. LEXIS 171247 (D. Utah Dec. 21, 2015) ...............................................................................................................8, 11, 14, 15

*United States ex rel Bender v. N. Am. Telecommunications*,
750 F. Supp. 2d 1 (D.D.C. 20210) ........................................................................11

*United States ex rel. Blyn v. Triumph Group, Inc.*,
No. 2:12CV922DAK, 2015 U.S. Dist. LEXIS 126944 (D. Utah Sept. 22, 2015) .................................................................................................................8, 13

*Corsello v. Lincare, Inc.*,
428 F.3d 1008 (11th Cir. 2005) .............................................................................9

*United States ex rel. Ellsworth v. United Bus. Brokers of Utah, LLC*,
No. 2:09CV353DAK, 2011 U.S. Dist. LEXIS 52358 (D. Utah May 16, 2011)......................15

*United States ex rel. Gublo v. NovaCare, Inc.*,
62 F. Supp. 2d 347 (D. Mass. 1999) ....................................................................10

*United States ex rel Lemmon v. Envirocare of Utah, Inc.*,
614 F.3d 1163 (10th Cir. 2010) .............................................................................7

*United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*,
2000 U.S. App. LEXIS 26915 (10th Cir. 2000) ...................................................7, 9

*United States ex rel Sikkenga v. Regence Bluecross Blueshield of Utah*,
472 F.3d 702 (10th Cir. 2006) ...............................................................................7

*United States ex rel. Sorenson v. Wadsworth Bros Constr. Co.*,
48 F.4th 1146 (10th Cir. 2022) .....................................................................7, 13, 15

*United States v. Ector County Hospital*,
386 F. Supp. 2d 759 (W.D. Tex. 2004)..................................................................9

*United States v. Fazzi Assocs.*,
16 F.4th 192 (6th Cir. 2020) ..................................................................................9

*United States ex rel. Winkler v. BAE Sys.*,
957 F. Supp. 2d 856 (E.D. Mich. 2013)................................................................9

**Statutes**

31 U.S.C. § 3729 ................................................................................................5, 16

31 U.S.C. § 3731(b) ............................................................................................3, 16

False Claims Act ............................................................................................. *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 9(b) ...................................................... *passim*

Federal Rules of Civil Procedure 12(b)(6) ...............................................................1

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Canon U.S.A., Inc. ("Canon USA") moves the Court for an order dismissing the Plaintiff's Complaint under the False Claims Act.  The basis for this motion is that: (i) the Complaint fails to meet Rule 9(b)'s heightened pleading standards applicable to claims under the False Claims Act; and (ii) the Relator's claim is barred or significantly limited by the False Claims Act's six-year statute of limitations.

## I.      RELIEF SOUGHT AND GROUNDS FOR RELIEF

This case is a <u>declined</u> *qui tam* action brought by a former government employee (now Relator) who attempts to assert a claim under the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq.  Specifically, the Relator claims that several printer manufacturers have collectively defrauded the federal government by failing to disclose that "their printers consumed color ink when selected for black-and-white or grayscale printing", thereby misleading the government into purchasing color printers and / or additional color ink.  *See* Complaint (Docket #1) at ¶¶ 5–6.  The Relator contends that this practice has gone on "for decades," citing an article that generally claims that the lack of formal printing policies limiting or restricting printing by employees has presumably cost the government millions of dollars.  *Id.*

Although the Relator advances an interesting hypothesis against the printer industry generally, his Complaint is devoid of any actual facts that would support a claim against Canon USA.  The Complaint does not contain any facts identifying the particular details of the alleged fraud purportedly committed by Canon USA against the government.  Likewise, the Complaint alleges no facts suggesting that the Relator has personal knowledge of any wrongful events, which purportedly date back into the 1990s.  Accordingly, the Complaint should be dismissed for at least two reasons:

First, the Complaint should be dismissed because it is deficiently pled under Rule 9(b). To bring an action under the False Claims Act, a prospective plaintiff must identify the "who, what, when, where and how" of the alleged fraud. The Relator's complaint falls woefully short of these standards. Among other things, the Complaint:

- does <u>not</u> identify even a single false claim, invoice, or contract submitted to the government for payment;

- does <u>not</u> identify any employee of Canon USA that was purportedly involved in or perpetrated the alleged scheme;

- does <u>not</u> identify any particular government agency, government employee, department or office that was purportedly misled by Canon USA;

- does <u>not</u> identify any details of what Canon USA purportedly said to the purchasing agent or why those statements would be material to the transaction;

- does <u>not</u> allege that black-and-white only printing is a condition of the government's purchase, and if so, what contract, statute, or regulation mandate this practice;

- does <u>not</u> identify the date of any alleged purchase or what product was purchased;

- does <u>not</u> identify the amount at issue, either generally or by product, agency, supplier, or year;

- does <u>not</u> identify any direct incidents, first-hand observations, direct conversations, or personal knowledge of any specific invoice or claim that should not have been paid during the Relator's term of service with the government.

Rather, the Relator attempts to skirt his pleading requirements by broadly alleging that Canon USA has made many sales over a long period of time, and therefore, it must necessarily have

defrauded the government at some unstated time or place.  This does not meet the pleading requirements of Rule 9(b).

Second, the Relator's Complaint must be dismissed, or at a minimum, significantly limited, under the False Claims Act's six-year statute of limitations.  *See*  31 U.S.C. § 3731(b).  Although the Relator does not specify <u>any</u> purchase dates in his Complaint and is silent as to his dates of alleged personal knowledge, he broadly alleges that the Defendants' practices have carried on "for decades", relying on a "2009 study" (which only supports the general notion that governmental printing policies could save money, and says nothing about practices of Canon USA), and changes in the industry occurring in the "late 1990s to 2000s."  *Id*. at ¶¶ 2,3, and 6.  Needless to say, claims this old would be clearly time-barred, and should be dismissed under the applicable statute of limitations.

## II.      STATEMENT OF FACTS

The following facts are alleged in the Relator's Complaint or part of the Court's record, and accepted as true for purposes of this motion only:

Plaintiff-Relator Johnathan Koehle originally filed his Complaint in this action on June 23, 2025.  *See* Docket #2.  On February 26, 2026, the United States notified the Court that it has declined to intervene in the matter.  *See* Docket #8.

The Complaint alleges that Mr. Koehle is a private individual and attorney licensed in Utah and California.  Compl. ¶ 14.  Relator states that he "was a former federal employee, has firsthand knowledge of federal agencies' use of printers manufactured by the Defendants, and knowledge of how printers use ink, how the government buys printers and ink, and how the government employees use ink."  *Id*.  Importantly, the Relator does not identify what position(s) he purportedly held as a federal employee, his dates of service, or job duties during his time in those roles.  *See*

3

*generally* Compl.[1]  Relator does, however, concede that his "experience is primarily with inkjet printers", as opposed to laser printers.  *Id*. at ¶ 16.

According to the Complaint, "[a] 2009 study found that the government spends $1.3 billion each year on printing (ink, toner, printers, papers, maintenance.)"  *Id*. at ¶ 2.  Relator contends that in the "late 1990s to 2000s, printing companies switched to using some color ink for black-ink print jobs", claiming that this will "maintain the health of the printer and its ink cartridges" and "give printed black ink more vibrant tones …."  *Id*. at ¶¶ 3–4.  Relator contends that the "Defendants" – collectively – (i) did not disclose to the government that printing would be suspended if the color ink cartridges were empty; (ii) did not disclose that printers use color ink when the user believes only black ink is being used; and (iii) force color ink to be purchased far beyond what should be needed…."  *Id*. at ¶ 5.

Relator contends that this practice has violated the Federal False Claims Act "for decades."  *Id.* at ¶ 6.  He further contends that the Defendants' misrepresentations "misled working federal employees and procurement officers into believing they were conserving color ink and thus receiving a cost-effective product when, in fact, they were using color ink without intention and unknowingly being charged for color ink usage through automatic service contracts and other

---

[1] The Utah State Bar directory indicates that Mr. Koehle was admitted to the Utah Bar on October 29, 2014. Based upon public information, Canon USA questions whether Mr. Koehle was employed by the federal government within the statute of limitations period relevant to this action.  Mr. Koehle appears to be the only "Jonathan Koehle" licensed in Utah based on the bar's database.  A comparable LinkedIn profile for an attorney named Jonathan Koehle, who also became licensed in Utah in 2014 and holds a license in California, indicates that this individual was employed by the Federal Bureau of Investigation (FBI) as a contract specialist from July 2012 –September 2013 and employed as a law clerk from for the Federal Maritime Commission from June 2010–November 2010.  *See* Jonathan Koehle, Linkedin, www.linkedin.com/in/jonathan-koehle-a444685 (last visited May 21, 2026).  If this information is accurate, these dates of employment would be outside the applicable six-year statute of limitations for asserting a claim under the False Claims Act.  Canon USA respectfully urges the Court to require the Relator to plead these predicate facts in the event the case is permitted to proceed, as the Relator's dates of employment, job duties, and level of seniority are critical to determining whether the alleged events at issue are barred by the statute of limitations.

purchases….."  *Id.* at ¶ 7.  Relator contends that had the government known this information, it "would likely have bought monochrome printers."  *Id.* at ¶ 8.

The Complaint claims that "[f]ederal agencies using many printers sold by Defendants are misled into spending taxpayer dollars on color ink unknowingly", thereby leading to "massive economic harm."  *Id.* at ¶ 20.  The Complaint does not identify, however, which agencies placed orders with which defendants, any employee who was allegedly misled, which product they purchased, what date it was purchased, which government facility it was used in, what expense was incurred, or what quantity of copies were printed under these false pretenses.  Indeed, the Complaint does not even state which "Defendant" purportedly engaged in which acts, or what portion of the unspecified harm was purportedly caused by any one industry actor.  Nevertheless, the Relator broadly claims that:

> Each purchase of a color cartridge, implicated color printer, and each charge allocated under federal purchasing programs, constitutes a false claim under 31 U.S.C. § 3729, as the payment was made based on material misrepresentations and omissions regarding printer functionality by Defendants.

*Id.* at ¶ 27.

With respect to Canon USA, the Relator's only specific allegation is that "the Canon PIXMA printers continue to draw from color cartridges even when users select 'black and white' or 'grayscale' in printer settings or print dialogue boxes."  *Id.* at ¶ 23.  Relator then acknowledges in the same paragraph that the Canon PIXMA User Manual contains "the most explicit disclosure the relator found after reviewing several user guides across all Defendants' inkjet product lines…."  *Id.* at ¶ 37.  Relator displays the following excerpt from Canon's publicly-available User Manual:

## Replacing Ink Tanks

When an ink tank runs out of ink, replace it using the following steps.

📖 **Note**
- Do not replace the ink tank while scanning documents. If you open the Scanning Unit (Printer Cover) while scanning, the document may not be scanned properly.
- To maintain optimal print quality, use an ink tank within six months of its first use.
- Once an ink tank has been used, do not remove it from the machine and leave it out in the open. This will cause the ink tank to dry out and the machine may not operate properly if it is reinstalled.
- Color ink consumption may occur even when black-and-white or grayscale printing is specified! Color ink is consumed in the head cleaning and deep cleaning, which are necessary to maintain the machine's capabilities!

Chapter 10                                            Routine Maintenance            **143**

*Figure 3, an excerpt from page 143 of the Canon PIXMA MP830 printer's User's Guide. Exhibit B(2). The first two Documents in B(2) are the GSA product page and marketing brochure which do not contain the very important albeit vague disclosure in Figure 3.*

*Id.* Relator further alleges that "most user manuals do not give the information that Canon PIXMA MP830's user manual gives…." *Id*. at ¶ 38. Nevertheless, the Relator contends that "most people" would not read the user manual before purchasing a printer and that the government does not require "such a high-level of due diligence before purchasing an item like a color printer…." *Id.*

Relator does not identify any specific contract or purchase of Canon USA products made by any federal agency or government employee during the last six years. *See generally* Compl. Likewise, Relator does not claim that any particular contract, statute, or regulation governing the purchase of printers requires the product to print exclusively in black-and-white as a condition of payment. *Id.* Rather, Relator alleges that the Defendants sell products on the GSA schedule, often through resellers, and that "Canon" [2] has several BPAs (Blanket Purchase Agreements) with federal agencies each worth huge amounts of money." *Id*. at ¶ 41, n.5.

Relator asserts a single claim for relief under the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and (B).

---

[2] Relator has sued two Canon entities, but only Canon USA, Inc. has been served at this time. The Relators' allegations do not distinguish between the two entities, and footnote 5 of the Complaint does not state which entity is the target of the allegation.

## III.    ARGUMENT

### A.    The Relator's Complaint Should be Dismissed Under Rule 9(b).

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." *See* Fed. R. Civ. P. 9(b).  Claims that are brought under the False Claims Act, like all other fraud claims, are subject to the heightened pleading standard.  *See, e.g.*, *United States ex rel Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010); *United States ex rel Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006).

The Tenth Circuit has previously held that a prospective plaintiff must identify, at a minimum, the "who, what, when, where and how" of the alleged misconduct.  *Sikkenga,* 472 F.3d at 726-27 (citation modified).[3]  With respect to False Claims Act matters, this means that:

> To satisfy Rule 9(b)'s requirements . . . a relator must provide details that identify particular false claims for payment that were submitted to the government. In a case such as this, details concerning the dates of the claims, the content of the forms or the bills submitted, their identification numbers, the amount of money charged to the government, the particular goods and services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity.

*Sikkenga*, 472 F.3d 702, at 727 (citation modified).  The Relator's Complaint fails to meet this heighted pleading standard in multiple respects.

---

[3] *See also United States ex rel. Sorenson v. Wadsworth Bros Constr. Co.*, 48 F.4th 1146, n.8 (10th Cir. 2022) ("Practically speaking, FCA claims comply with Rule 9(b) when they provide factual allegations regarding the who, what, when, where, and how of the alleged claims." (quoting *United States ex rel. Polukoff f. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir.2018))); *United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 2000 U.S. App. LEXIS 26915, *9–10  (10th Cir. 2000) ("At a minimum, Rule 9(b) requires a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.") (internal citations omitted).

### 1.      Relator Fails to Identify a Single False Claim.

The Relator's Complaint fails to state a claim at the most basic level, as he does not identify a single false claim submitted by Canon USA to the government.  The Relator brings his claim under 31 U.S.C. §3729(a)(1)(A) and (B), which requires proof that a defendant:

> (A)  knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B)   knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

A "defendant's presentation of a false or fraudulent claim is a central element of every False Claims Act case.'"   *United States ex rel. Blyn v. Triumph Group, Inc.*, No. 2:12CV922DAK, 2015 U.S. Dist. LEXIS 126944, at *9 (D. Utah Sept. 22, 2015) (quoting *Sikkenga*, 472 F.3d at 727).  "Mere reference to a general scheme of methodology is insufficient to satisfy Rule 9(b).  An FCA claim should be dismissed if the relator fails to identify any person, place or time when an actual false claim or other legal activity occurred." *United States ex rel Barrick v. Parker-Migliorini Int'l, Inc.*, No. 2:12-cv-00381-DB, 2015 U.S. Dist. LEXIS 171247, at *8 (D. Utah Dec. 21, 2015) (citation modified).

Here, the Relator fails to identify any claim, invoice, or bill submitted to the federal government by Canon USA, nor does it identify any details of the alleged purchase.  The Relator does not identify which products were actually purchased by which agency or employee, does not provide the amount charged, does not identify the dates of purchase, does not identify the individuals involved in the alleged fraudulent billing, or any other information that would assist the Court in evaluating the nature or magnitude of the fraud purportedly committed by Canon USA.  Rather, the Relator only generally describes how an alleged scheme could have potentially operated within the printing industry, without linking his theory to any particular purchase of Canon USA products.

The Tenth Circuit has previously found that these types of generalized and conclusory allegations are insufficient as a matter of law.  For example, in *United States ex rel. Schwartz v. Coastal Healthcare*, the appellate court evaluated a qui tam action brought under the FCA in which a physician alleged that certain hospitals violated the Medicare Anti-Kickback provisions through fraudulent billing practices.  *See* No. 99-3105, 2000 U.S. App. LEXIS 26914, at *3 (10th Cir. Oct. 26, 2000).  Among other things, the physician claimed that the defendant entered into "contracts" with "hospitals" spanning close to a decade, but failed "to identify any particular hospital or physician who signed such an agreement, nor does he identify any of time when a false or fraudulent claim was presented."  *Id.* at *14.  The Court determined that these generalized allegations were insufficient, stating:

> [The complaint] sets out a methodology by which the vendors might have produced false invoices, which in turn could lead to false claims.  Without citing a single false claim arising from the allegedly false invoice, Relator has not met even a bare-bones Rule 9(b) test.

*Id*. at *16 (quoting *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp.2d 141, 147 (D. Mass. 2000).  *See also United States v. Fazzi Assocs.*, 16 F.4th 192, 196 (6th Cir. 2020) ("The default rule is that a False Claims Act claimant must identify a 'representative claim that was actually submitted to the government for payment.'"(quoting *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 915 (6th Cir. 2017))).  Numerous other courts have similarly dismissed deficient claims when the relator fails to identify any particular claim or representative claim that was submitted to the government for payment.[4]

---

[4] *See e.g. Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) ("Underlying improper practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the government."); *United States ex rel. Winkler v. BAE Sys.,* 957 F. Supp. 2d 856 (E.D. Mich. 2013) (dismissing qui tam complaint arising out of sale of vehicles to the government when complaint did not present an actual false claim or personal knowledge of billing and certification processes); *United States v. Ector County Hospital*, 386 F. Supp. 2d 759, 764 (W.D. Tex. 2004) (dismissing claim when "the Relator has provided no factual basis for his belief that Defendants submitted claims for

The same principles apply here.  In this case, the Relator has identified no specific claim, representative claim, or contract between Canon USA and any government agency that was purportedly submitted under false pretenses.  Nor does the Relator identify any personal knowledge or circumstances that would give his theory the necessary "indicia of reliability" needed to support his generally theory.  The Relator identifies no specification that was purportedly breached, no contract provision that mandated black-and-white printing only,[5] and no facts that would allow the Court to conclude that any particular government agency, department, or representative would have rejected a potential invoice or payment claim under the circumstances.  Rather, the Relator advances only a generalized theory against the industry as whole and speculation as to the quality of the government's procurement processes.  This is insufficient under the law, and for this reason alone, the complaint should be dismissed.

### 2.    Relator Fails to Identify "Who" Made the False Claim.

The Relator's Complaint must further be dismissed because it fails to identify any individual who allegedly made the false statement to the government or "who" within the government purportedly relied upon any false statements.  The federal courts have previously recognized that:

> A complaint must make specific allegations against each individual defendant rather than collective allegations against each of the above-named Defendants, since one of the main rationales behind Rule 9(b)'s particularity requirement is to guarantee all defendants sufficient information to allow for preparation of a

---

medically unnecessary services other than his conclusory statement that the services were performed"); *United States ex rel. Gublo v. NovaCare, Inc.*, 62 F. Supp. 2d 347, 354 (D. Mass. 1999) ("[P]laintiffs simply allege three methods by which NovaCare is said to have inflated its bills to the government, without citing a single instance of a false claim.").

[5] The Relator attempts to establish this element by attaching general government policies that favor cost-effective printing.  The Relator, however, points to no section within any policy stating that a claim will not be paid if it does not conform to this guidance.  Moreover, the Relator pleads no facts suggesting that any of these agencies purchased products from Canon USA, or if they did, what products or in what time frame.

response.  Therefore, Plaintiff must specifically allege facts giving rise to liability for each defendant individually.

*United States ex rel Bender v. N. Am. Telecommunications*, 750 F. Supp. 2d 1, 6 (D.D.C. 20210) (citation modified).   Further, this District has previously dismissed a complaint when the defendant's offending employee is not identified, stating:

> Barrick's Amended Complaint does not identify a single employee of the Defendants or department within one of the Defendants' entities that was responsible for the one of these alleged false statements.  Arguably, Defendants' various entities are made up of hundreds, if not thousands, of employees.  At a minimum, Rule 9(b) demands that Barrick identify the employee or employees responsible for the alleged false claims under the FCA.
>
> Barrick alleges that through his own efforts of reviewing, analyzing and comparing financial records and other business documents of the Defendants, Barrick was able to discover Defendants' fraud. If Barrick had such intimate access to Defendants' books and records, he theoretically should be able to point to at least one transaction where he can identify the source of the false statement. Without more specificity regarding who was responsible for the alleged false statements, Barrick has failed to satisfy the heightened pleading burden of Rule 9(b).

*Barrick*, 2015 U.S. Dist. LEXIS 171247, at *11 (citation modified).

The Relator's claim in this matter fails in the same respect.  Here, the Relator's claim suffers from "group pleading" and generalities levied against the printer industry as a whole.  The Relator does not identify even a single Canon USA employee purportedly involved in perpetrating this scheme, nor does the Relator identify any government employee that claims to have been misled by Canon USA.  The Complaint does not identify who the relevant sales or procurement personnel are, who placed the order, or the transactions in which the individuals were involved. Indeed, the Relator fails to identify even a single conversation with a single government employee that led him to uncover the alleged fraud.  These should be simple tasks if the Relator was employed by the government during the relevant time period and has direct knowledge, as he

11

claims.  Absent this information, the Complaint lacks the requisite indicia of reliability needed to proceed under Rule 9(b).

### 3. Relator Fails to Identify "What" Made the Claim False.

The Relator's Complaint must further be dismissed because it fails to identify the precise content of a fraudulent statement purportedly made by Canon USA that was purportedly relied upon by the government in making its purchasing decision.  As stated above, the Relator's sole allegation against Canon USA is that the Canon PIXMA printers, like other competitive products, "continue to draw from color cartridges even when users select 'black and white' or 'grayscale' in printer settings or print dialogue boxes."  *See* Compl. ¶ 23.  The Relator's complaint, however, then continues on to *favorably* distinguish Canon USA from its competitors, stating that the Canon PIXMA User Manual contains "the most explicit disclosure the relator found after reviewing several user guides across all Defendants' inkjet product lines…."  *Id.* at ¶ 37.  The Relator also includes an excerpt from Canon's publicly-available User Manual in his Complaint, which states:

> Color ink consumption may occur even when black-and white or grayscale printing is specified.  Color ink is consumed in the head cleaning and deep cleaning, which are necessary to maintain the machine's capabilities.

*Id.*  The Relator further alleges that "most user manuals do not give the information that Canon PIXMA MP830's user manual gives…."  *Id*. at ¶ 38.  Nonetheless, the Relator contends – without pleading any actual facts – that "most people" would not read the user manual before purchasing a printer and that the government does not require "such a high-level of due diligence before purchasing an item like a color printer…."  *Id.*

Of note, the Relator does not identify any specific contract or purchase of Canon USA products made by any federal agency or government employee during the last six years, nor does he claim that any particular contract, statute, or regulation governing the purchase of printers requires the product to print exclusively in black-and-white as a condition of payment.  *Id.*  He

cites no contract specification or provisions mandating such a practice. Rather, Relator alleges that the Defendants sell products on the GSA schedule, often through resellers, and that Canon has several sizeable BPAs with the government. *Id*. at ¶ 41, n.5. These general allegations, without more, cannot meet the pleading standards of Rule 9(b).

Judge Kimball's decision in *United States ex rel. Blyn v. Triumph Group, Inc.* is particularly instructive. In *Blyn*, the relators alleged that the defendant manufactured nonconforming gears that were used by federal government in civilian and military aircraft. *See* 2015 U.S. Dist. LEXIS 126944, at *2. The relators boldly alleged that every gear sold by TGS is a violation of the FCA because the gears were represented to have conformed to contractually applicable specifications. *Id.* at *6. The District Court found that the Complaint "fails to state an FCA claim at the most basic level in that it does not identify a single false claim submitted to the government." *Id.* at *9. The Court elaborated on its reasoning, finding:

> Relators' theory appears to be that TGS made false claims by failing to comply with contractual requirements. If that is the theory, it is incumbent upon Relators to allege with particularity both (a) the violation of a specific contractual provision and (b) that compliance with that provision was necessary for the government to pay a claim for payment. Moreover, a false certification is actionable under the FCA only if it leads the government to make a payment which it would not otherwise have made. If the government would have paid the claims despite knowing that the contractor has failed to comply with certain regulations, then there is no false claim for purposes of the FCA.

*Id.* at * 10-11 (citation modified). *See also United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co.*, 48 F.4th 1146, 1157 (10th Cir. 2022) (dismissing complaint when Relator failed to estimate the quantum of the alleged underpayments and the pleading contained no allegations regarding whether the government agency was aware of the alleged issues and purchased anyway).

The Relator's claim in this matter presents an even weaker set of facts. Again, the Relator points to no contract, no product specification, no statute, and no regulation that requires Canon

13

USA to produce a printer for government use that prints exclusively in black-and-white.  And Relator identifies no government agency or employee who rejected Canon USA's products as failing to meet their required standards or needs.  Not a single false statement by Canon USA is alleged.  To the contrary, the only well-plead facts alleged against Canon USA in the Complaint establish that Canon USA voluntarily discloses a product feature in its publicly available manual and resources.  The Relator's assumption that government procurement officials have not properly researched the products that they purchase is entirely unsupported.

### 4. Relator Fails to Identify "When" the False Claim Was Made.

The Relator's Complaint must further be dismissed because it fails to identify any time frame under which the false claim was purportedly made.  Instead, the Complaint only generally alleges that the Defendants' practices have carried on "for decades", relying on a "2009 study" and changes in the industry occurring in the "late 1990s to 2000s."  *See* Compl. ¶¶ 2–3,  6.  Critically, there are no specific transactions identified during the last six years within the relevant statute of limitations period.  This cannot satisfy Rule 9(b) as a matter of law.  *See Barrick*, 2015 U.S. Dist. LEXIS 171247, at *12 (Relator's "eight-year time frame implicates a multitude of transactions and fails to place Defendants on notice of Barricks' allegations.").

Moreover, the timing of the Relator's Complaint is highly suspect where the Relator alleges no facts regarding the duration of his public service or purported job responsibilities.  Canon USA's good faith investigation suggests that the Relator may have concluded his employment with the government as early as 2013, which would beg the question as to whether he actually possesses any personal knowledge of events occurring with the actionable time period.  *See* note 1 *infra.* Without these predicate facts being pled, this Court has no way of determining whether the Relator's claims bear the necessary indicia of reliability required by Rule 9(b).  Thus, the claim should be dismissed.

### 5.     Relator Fails to Identify "Where" the False Claim Was Made.

The Relator's Complaint further fails to identify the location of the alleged false statement. The pleading does not identify where the allegedly non-conforming printers or cartridges were shipped, which government locations they were used at, or the facilities in which they were serviced.   Without these facts, Canon USA cannot meaningfully investigate whether any complaints were lodged at a particular location, repairs or maintenance undertaken, or personnel involved in the transaction.  The Complaint's failure to identify the relevant location further serves as grounds for dismissal.  *See Sorenson.*, 48 F.4th 1146, 1156 (dismissing complaint that failed to identify location of the alleged incident).

### 6.     Relator Fails to Identify "How" the False Claim Was Made.

Finally, the Relator's Complaint should be dismissed because it fails to identify "how" the alleged false statements were purportedly submitted to the government.   Again, the Relator identifies no invoice, bills, contract, or submittal, but rather relies on Canon USA's general presence in the government supplier space via its GSA schedule and broader government relationships.  The Relator further alleges that at least some sales may occur through resellers, rather than from Canon USA directly.  The Relator further fails to plead any facts suggesting that any government procurement officials failed to do their jobs or otherwise failed to conduct an appropriate level of due diligence in making their purchase.  The conclusory allegations of the Complaint, without more, cannot establish the required indicia of reliability needed by Rule 9(b). *See Barrick*, 2015 U.S. Dist. LEXIS 171247, at *13; *see also United States ex rel. Ellsworth v. United Bus. Brokers of Utah, LLC*, No. 2:09CV353DAK, 2011 U.S. Dist. LEXIS 52358, at *11 (D. Utah May 16, 2011) (holding that "simply stating" that the Defendants received loans from the SBA is not sufficient to imply fraud when the plaintiff did not show how conduct was fraudulent or how the fraud was committed).

15

Simply stated, the Relator does not plead the requisite details needed to establish the "who, what, when, where and how" of the alleged misconduct purportedly committed by Canon USA. The Relator's generalized pleading of a theory against the industry as a whole fails as a matter of law. Accordingly, the Complaint should be dismissed.

### B.      The Relator's Complaint is Time-Barred.

The Relator's Complaint should separately be dismissed because it is time-barred, in whole or in significant part, by the applicable statute of limitations. 31 U.S.C. § 3731(b) provides that:

> A civil action under section 3730 may not be brought—
>
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

Here, the Relator identifies no facts that would allow the Court to evaluate when the alleged events at issue took place. To the contrary, the only facts that have been pled suggest that the conduct at issues has been engaged in "for decades." *See* Compl. ¶ 2. These broad allegations raise serious questions as to whether the alleged fraud was committed within the prior six years or could have reasonably been discovered within the shorter time frame period. The fact that the Relator contends that the allegedly wrongful conduct has carried on for decades suggests that the shorter discovery rule may likely apply, and that any more recent events would likely stem from earlier, time-barred events. At a minimum, the Relator's claims should be limited to the extent they fall outside the relevant limitations period, and if permitted to proceed, the Relator should be required to replead the relevant time with particularity to allow the Court to fully evaluate the timeliness of the claim.

16

At the very least, it is undisputed that this case was filed on June 23, 2025. The Complaint is silent on when the alleged false claims were made, providing not a single date of a purported false claim.  Thus, to the extent that the purported FCA violations occurred before June 23, 2019, they are time-barred.

## IV.    REQUEST FOR RELIEF.

For the reasons stated above, the Complaint should be dismissed.

DATED this 22nd day of May, 2026.     **DORSEY & WHITNEY LLP**

 */s/ Kimberly Neville*
Milo Steven Marsden
Kimberly Neville
Anthony P. Badaracco
*Attorneys for Canon U.S.A., Inc.*

17